The plaintiff, Jimmy Dykes, appeals from a summary judgment for the defendants, Lane Trucking, Inc., and one of its employees, Tommy Andrews, in this action seeking damages for an alleged wrongful termination of employment. We affirm.
Dykes, a truck driver, alleged that Andrews had fraudulently induced him to accept employment with Lane Trucking by misrepresenting to him that he would not be required to drive an excessive number of hours. He further alleged that Lane Trucking had terminated his employment after he refused to make a delivery that, he says, would have placed him in violation of guidelines issued by the United States Department of Transportation restricting the number of hours *Page 249 
that truck drivers can drive within a certain period of time. The defendants contend that Dykes was an employee-at-will and, therefore, that the trial court could have properly based its judgment on Dykes's employment status.
After carefully reviewing the record, we conclude that the summary judgment was proper. It is undisputed that Andrews, who was the only person who dealt directly with Dykes during the hiring process, did not personally offer Dykes lifetime employment or employment of any definite duration. Furthermore, the "Employee Personnel Policy Handbook," upon which Dykes partially relies in an attempt to come within the rule recognized in Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725
(Ala. 1987), provided, in pertinent part, as follows:
 "We want our employees to be happy working here. That's one reason we provide good pay and good working conditions. We want you to enjoy working here.
 "However, we should all understand that employment at Lane Trucking, Inc., is not offered, guaranteed, contracted, or promised for any specific length of time. You have the right to leave our company at any time and the company has the right to terminate the employment relationship at any time. This is just good business practice for everyone.
 "The policies described in this employee handbook are not conditions of employment and the language is not intended to create a contract between Lane Trucking, Inc., and its employees.
". . . .
 "We consider the first 90 days that you work for us a 'try-out' period. It gives us an opportunity to find out whether your work, your attitude, and your attendance measure up to our standards of performance, and it gives you the opportunity to see if you will enjoy working here.
 "At any time during this period, you may decide to resign without stating a reason, or you may be released by the company on the same basis without any bad effect on your employment record. We think that this policy is a fair one in that each of us will have this period of time to adapt to our working relationship. Also, our employment 'at will' policy will remain in effect during the entire course of your employment, even after the probationary period has been completed.
". . . .
 "Regardless of the reason for separation of employment, please remember that we operate under an 'at will' policy as described earlier in this handbook."[1]
When this Court held in Hoffman-La Roche that language contained in an employee handbook could create a unilateral contract of employment for a definite duration or under particular circumstances, it was careful to explain that the language used in the handbook had to be sufficiently clear and specific, so as to constitute an actual offer rather than a mere statement of policy:
 "Of course, to become a binding promise, the language used in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy. See [Pine River State Bank v. Mettille, 333 N.W.2d 622, 626 (Minn. 1983)]. However, whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, rather than by their uncommunicated beliefs. See Mayo v. Andress, 373 So.2d 620 (Ala. 1979). It is axiomatic that an offer must be communicated before it may be accepted. See generally, S. Williston G. Thompson, Selections from Williston's Treatise on the Law of Contracts, § 33, at 37 (Rev. ed. 1938). Indeed, if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook. Thus, this Court has refused *Page 250 
to hold the provisions of a handbook enforceable against an employer where the handbook at issue expressly stated the following:
 " 'This Handbook and the policies contained herein do not in any way constitute, and should not be construed as a contract of employment between the employer and the employee, or a promise of employment.'
 "McCluskey v. Unicare Health Facility, Inc., 484 So.2d 398, 400 (Ala. 1986)."
512 So.2d at 734.
Whether the language of an employee handbook is sufficiently clear and specific to constitute an offer of a unilateral contract is a question of law to be determined by the court.Campisi v. Scoles Cadillac, Inc., 611 So.2d 296 (Ala. 1992). Based on the language of the employee handbook, we hold that Dykes was an at-will employee and, therefore, that his employment was subject to termination with or without cause. Because an at-will employee is, with certain statutory exceptions, see Ala. Code 1975, § 12-16-8.1 and § 25-5-11.1, subject to dismissal for any reason or for no reason, this Court, in Salter v. Alfa Ins. Co., 561 So.2d 1050 (Ala. 1990), held that the mere showing of a loss of employment is legally inadequate to establish the element of damage in a fraud claim by an at-will employee. We reasoned that because such an employee is terminable at will, even for a malicious reason, there can be no legally compensable injury resulting from the employer's terminating the employment. See, also, Burrell v.Carraway Methodist Hospitals of Alabama, Inc., 607 So.2d 193
(Ala. 1992). The record indicates that the only damage Dykes could have suffered would have stemmed from his loss of employment with Lane Trucking. The record does not support his assertion on appeal that Andrews's alleged misrepresentation induced him to leave his former job, and thus it does not bring this case within the holding of Kidder v. AmSouth Bank, N.A.,639 So.2d 1361 (Ala. 1994). In this regard, Dykes testified as follows:
 "Q. Were you working for somebody just prior to going to work for Lane Trucking?
 "A. I worked for AMX, the last company I worked for before Lane.
". . . .
 "Q. All right. What was your reason for leaving AMX?
 "A. Well, they were running me — the main reason I left them was running too many hours.
"Q. Did you quit or were you fired or —"
 A. It's . . . I quit. It's kind of a — never did officially quit. It's kind of a situation — I called in on my last run. I told them that I was running to the ground. They were running me so hard. I called in and I told them that I needed a few days off. And he said, 'How long?' I said, 'Oh, well, maybe a couple of weeks.' And that was just prior to Christmas. And then I checked back with them, and they — my truck was out on the road. I called two or three times. My truck was out somewhere else. You know, they were bad about slip-seating, which is changing drivers for individual trucks. You know, you don't drive the same one all the time. They tried to, but occasionally they slipped up. So that's how I got caught up there.
 "Anyway, then my brother-in-law came down with cancer so I just never did go back. I thought he was gonna die so I took off for — until I found out he was gonna be okay and — his operation and everything. And that's when I went with Lane."
We also note Dykes's suggestion that we should carve out a public policy exception to the employee-at-will doctrine; however, we again decline to modify the employee-at-will doctrine by recognizing such an exception to it in this case. Historically, this Court has deferred to the judgment of the legislature as to the need for such an exception. See, e.g.,Howard v. Wolff Broadcasting Corp., 611 So.2d 307 (Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1849, 123 L.Ed.2d 473
(1993), and the cases cited therein.
We decline to address Dykes's argument that the employee-at-will doctrine violates the equal protection guarantee of the Fourteenth Amendment to the United States Constitution. *Page 251 
Dykes argues in general terms that application of the employee-at-will doctrine in this case is unconstitutional because it "essentially [deprives him], or other employees similarly affected, of the protection commanded by the federal [Department of Transportation] regulations." Dykes cites no cases in which any court has held the employee-at-will doctrine to violate the equal protection guarantee of theFourteenth Amendment. Neither does he specifically address whether judicial enforcement of the employee-at-will doctrine is sufficient "state" action to invoke the Fourteenth Amendment; why the doctrine should be declared unconstitutional, given the fact that all employees in this state, except those who enter into employment contracts to the contrary, are equally subject to it; and how Article I, § 10, of the United States Constitution, which prohibits the states from passing any law impairing the obligations of contracts, factors into this analysis. This last consideration is of particular importance, because the "evil" that Dykes seeks to eliminate by the creation of a civil cause of action for damages within the context of this case is the absence of a restriction on the freedom to contract. We have unequivocally stated that it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument. Spradlin v. Spradlin, 601 So.2d 76
(Ala. 1992). We conclude that, for purposes of review, Dykes has not adequately presented any issues relating to the constitutionality of the employee-at-will doctrine.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
MADDOX, ALMON, INGRAM and COOK, JJ., concur.
KENNEDY, J., dissents.
[1] The "Driver's Handbook and Safety Manual," referred to by Dykes in his brief and in his memorandum in opposition to the motion for summary judgment, does not appear in the record. In any event, we note that the excerpts from that manual that are set out in Dykes's memorandum in opposition to the motion for summary judgment do not indicate that the manual would bring this case within the rule of Hoffman-La Roche.