On Application for Rehearing

COBB, Chief Justice.
This Court’s opinion of November 13, 2009, is withdrawn, and the following is substituted therefor.
Henry Penick, the defendant in an action in the Jefferson Circuit Court seeking specific performance of an agreement to execute a deed in lieu of foreclosure and ejectment, appeals from a summary judgment in favor of the plaintiff, Most Worshipful Prince Hall Grand Lodge F & A M of Alabama, Inc. (“the Lodge”). We affirm in part, reverse in part, and remand.

I. Factual Background and Procedural History

Penick is a member of the Alabama State Bar and practices law in Birmingham.[1] On July 12, 1991, Penick executed two notes evidencing his indebtedness to the Lodge,[2] one in the amount of $50,000 and the other in the amount of $150,000, *420 and a second mortgage on his law-office property securing the notes.[3]
The notes were identical in all respects except for the amount. Paragraph 10 of the notes provided that, if an interest in the property securing the notes was transferred without the Lodge’s prior written consent, the Lodge had a right to “demand immediate payment in full of all sums secured.” If the Lodge exercised this option, the Lodge was to give Penick notice of acceleration providing not less than 30 days for full payment. If Penick failed to fully pay all sums secured by the property within that 30-day period, the Lodge was entitled to “invoke any remedies permitted by this Security Instrument without further demand on [Penick].”
Penick mortgaged his office building in Birmingham as security for the loan.[4] The mortgage contained the following pertinent provisions:
“17. Transfer of the Property; Assumption. If all or any part of the property is sold or transferred by [Pen-ick] without [the Lodge]’s prior written consent, .excluding ... the creation of a lien or encumbrance subordinate to this Mortgage ..., [the Lodge] may, at [the Lodge’s] option, declare all the sums secured by this Mortgage to be immediately due and payable.... If [the Lodge] exercises such option to accelerate, [the Lodge] shall mail [Penick] notice of acceleration.... Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which [Penick] may pay the sums declared due. If [Penick] fails to pay such sums prior to the expiration of such period, [the Lodge] may, without further notice or demand on [Penick], invoke any remedies permitted by paragraph 18 hereof.
“18. Acceleration; Remedies. Except as provided in paragraph 17 hereof, upon [Penick’s] breach of any covenant or agreement of [Penick] in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, [the Lodge] prior to acceleration shall mail notice to [Penick] as provided in paragraph 14 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to [Penick], by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform [Penick] of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of [Penick] to acceleration and sale. If the breach is not cured on or before the date specified in the notice, [the Lodge] at [the Lodge’s] option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law.
“19. [Penick’s] Right to Reinstate. Notwithstanding [the Lodge’s] acceleration of the sums secured by this Mortgage, [Penick] shall have the right to have any proceedings begun by [the Lodge] to enforce this Mortgage discon *421 tinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) [Penick] pays [the Lodge] all sums which would be then due under this Mortgage [and] the Note[s] ... had no acceleration occurred; (b) [Penick] cures all breaches of any other covenants or agreements of [Penick] contained in this Mortgage; (c) [Penick] pays all reasonable expenses incurred by [the Lodge] in enforcing the covenants and agreements of [Penick] contained in this Mortgage and in enforcing [the Lodge’s] remedies as provided in paragraph 18 hereof, including, but not limited to, reasonable attorney’s fees; and (d) [Penick] takes such action as [the Lodge] may reasonably require to assure that the lien of this Mortgage, [the Lodge’s] interest in the Property and [Penick’s] obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payments and cure by [Penick], this Mortgage and the obligation secured thereby shall remain in full force and effect as if no acceleration had occurred.”
By September 2002, Penick had defaulted on the notes. On September 17, 2002, the attorney for the Lodge sent Penick a letter stating that the “account is seriously delinquent” and that the balance on the notes was immediately payable. The letter also stated that unless the entire balance of the debt was paid, the law-office property securing the notes would be offered for public sale. A copy of the mortgage-foreclosure-sale notice, specifying a sale date of October 14, 2002, was enclosed with the letter. The Lodge also filed a foreclosure action against Penick.
The October 14, 2002, sale date was postponed, and on October 16, 2002, Pen-ick and the Lodge entered into a “modification agreement,” which provided that Penick would pay a lump sum of $17,500, would resume monthly payments of $1,800, and would begin making monthly payments of $1,000 toward the arrearage. The modification agreement also provided:
“2. PENICK agrees that all other terms and conditions of the Note and Mortgage which are not expressly modified hereby remain in full force and effect. In the event in [sic] a default in the terms of the Note or Mortgage as modified, PENICK agrees to execute and deliver a Deed in Lieu of Foreclosure on written request of the [Lodge], provided however, that as long as any payment under the terms of the Note and Mortgage as modified is paid within the month in which it comes due, such payment shall not be considered as a default under the terms of the Note and Mortgage as modified. The time of performance of all other covenants and conditions of the Note and Mortgage shall not be affected by this agreement.
[[Image here]]
“8. PENICK shall pay any past due taxes and insurance on or before October 31, 2002 and maintain taxes and insurance as required by the terms and conditions of the Note and Mortgage.”
(Capitalization in original.)
The record contains an affidavit by Pen-ick. In the affidavit, Penick stated:
“Prior to executing the Modification Agreement, I called Leo Math[, the attorney for the Lodge,] and informed him that I did not want to sign the agreement because I did not want the ... Lodge ‘sneaking up on me’ and demanding a deed in lieu of foreclosure, but instead wanted the ... Lodge to notify me of the amount in default and give me thirty (30) days to cure that amount and to reinstate and, failing that, the ... *422 Lodge could then demand a deed in lieu of foreclosure. I asked that these provisions be incorporated into the Modification Agreement. Mr. Math, as attorney for [the Lodge] told me that it was not necessary to include the notice provisions, rights to cure and reinstatement in the Modification Agreement, because those rights were already in the Notes and Mortgage and the Modification Agreement did not modify those provisions. He pointed my attention to the specific language in the Modification Agreement that says ‘Penick agrees that all other terms and conditions of the Note or Mortgage which are not expressly modified hereby remain in full force and effect.’ He also pointed to the language in Paragraph 2 of the Modification Agreement that says ‘the time of performance of all other covenants and conditions of the Note and Mortgage shall not be affected by this Agreement.’ ”
After Penick executed the modification agreement, the Lodge dismissed its foreclosure action against him.
On August 23, 2006, the Lodge sent Penick a letter that stated:
“This account is seriously delinquent and you are hereby advised that the balance due under the note and mortgage are hereby accelerated pursuant to the terms thereof. Unless the entire balance of the debt, including costs incurred to date, is paid in full to our office, we will foreclose on the property and offer it up for public sale_En-closed is a copy of the Mortgage Foreclosure Sale Notice. No further notices will be sent to you. CONTACT THIS OFFICE WITHIN TEN DAYS OF THE DATE OF THIS LETTER TO OBTAIN THE PAYOFF AMOUNT AND PAY THE OUTSTANDING BALANCE IF FULL.”
(Capitalization in original.)
Penick responded by letter dated September 15, 2006, to one of the Lodge’s attorneys, in which he stated:
“On August 28, 2006, I requested you and [another of the Lodge’s attorneys] to request the Grand Master [of the Lodge] to allow me to cure the default in my loans, pay my loans current and allow me to resume payments. You indicated that you would discuss this matter with the Grand Master and would let me know. Nearly 3 weeks have elapsed, yet I have not received a reply from you ... nor has anyone told me what amount I need to pay to bring my loans current. Please provide me with a written response detailing the amount needed to bring the loans current.
“If the Grand Master is not inclined to let me cure the default, I would like to discuss a plan to pay off the ... loans.... ”
On September 25, 2006, Penick filed a petition in bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama. On October 10, 2006, Penick again wrote one of the attorneys for the Lodge, offering to pay all past-due amounts “in exchange for” the Lodge’s agreement to allow him to resume payments. On October 24, 2006, Penick’s bankruptcy petition was dismissed.
On November 7, 2006, Penick sent the Lodge a letter that stated:
“Since you have not responded to the request I made on October 26, 2006, to bring my loans current,[5] I am enclosing a cashier’s check in the amount of *423 $14,000.00, which represents payments due from June 12, 2006 through October 12, 2006.
“Pursuant to a conversation with the Grand Master, I paid the Grand Lodge current on May 10, 2006, by paying the sum of $4,100.00. (Exhibit 1). The payment ... due for May 12, 2006, was paid in two installments on June 9, 2006, and July 7, 2006.”
On November 13, 2006, the attorney for the Lodge wrote Penick and stated:
“Pursuant to paragraph 2 of [the modification] agreement, the Lodge has elected to request a deed in lieu of foreclosure based on your existing and continuing default in payments under that agreement.... Please execute and return a notarized copy of this deed within ten days of the date of this letter.... ”
By correspondence dated November 20, 2006, the Lodge sent Penick a mortgage-foreclosure-sale notice.
By letter dated November 21, 2006, the Lodge informed Penick that it was rejecting Penick’s offer to settle and returning his $14,000 cashier’s check. The Lodge further stated: “We have previously made an offer to settle and provided the figures to pay off the mortgage and attorney fees incurred over the past four years of working on this file.... The balance in full is demanded.”
On December 19, 2006, Penick filed a second petition in bankruptcy in the United States District Court for the Northern District of Alabama. On September 5, 2007, Penick’s second bankruptcy petition was dismissed.
On October 5, 2007, a federal tax lien was filed on the mortgaged property for $61,407.97 in unpaid income taxes for the years 1996, 1997, 2000, 2001, 2002, 2004, and 2005. In 2007, the property was sold at a tax sale for unpaid property taxes.
On November 26, 2007, the Lodge filed a complaint in the Jefferson Circuit Court. The Lodge’s complaint contained two “counts.” Count I sought an order requiring Penick to sign a deed in lieu of foreclosure. Count II was a request for an order of ejectment. On January 2, 2008, Penick filed a motion to dismiss.[6] On April 4, 2008, Penick answered the complaint. In his answer, he asserted without specificity that the Lodge lacked capacity to sue.
On June 12, 2008, the Lodge filed a motion for a summary judgment on both counts of the complaint. Penick opposed the motion. On July 10, 2008, the trial court held a hearing on the motion. At the hearing, Penick stated that it had “probably been” 24 months since he had made a payment on the notes. However, he stated that he had offered to pay the past-due amounts and had tendered a check to bring the loans current, but the Lodge had refused his check. Penick’s statements at the hearing were not made under oath.
On July 29, 2008, the trial court entered an order granting the Lodge’s summary-judgment motion, ordering Penick to execute the deed in lieu of foreclosure, and ordering Penick to vacate the property. In that order, the trial court stated:
“The modification agreement provides that in the event of default under the terms of the note or mortgage as modified, upon written demand, Penick would execute and deliver to [the Lodge] a deed in lieu of foreclosure. [The Lodge] has made written demand on Penick for a deed in lieu of foreclosure but he has *424 refused to do so but he remained in possession of the subject property.
“It is undisputed that the monthly payments due have not been paid on a timely basis and that Penick is in arrears in payments by more than thirty (30) days. A tax lien has been filed against the property. The undisputed facts show that Penick has breached the terms of the original mortgage as well as the terms of the modification agreement. ...
“The modification agreement is not ambiguous .... The plain language of the modified agreement obligates Penick to sign a deed in lieu of foreclosure upon the written demand of the Grand Lodge, if there is a default under the terms of the note and mortgage as modified. There are at least three undisputed matters of default: monthly payments due have not been paid on a timely basis; the payments are in arrears by more than thirty (30) days; and a tax lien has been filed against the property. The [Lodge] has made a written demand for execution and delivery of a deed in lieu of foreclosure and [Penick] has refused to provide the same. [The Lodge] is entitled to a deed in lieu of foreclosure under the terms of the note and mortgage as modified.... ”
On August 5, 2008, Penick filed a notice of appeal from the judgment of the trial court.

II. Standard of Review

“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038 (Ala.2004).

III. Analysis

A. Standing

The Lodge brought this action under the name of “The Most Worshipful Prince Hall Grand Lodge F & A M of Alabama, Inc.” It is undisputed that the Alabama Secretary of State has no record of a corporation by this name.[7]
The record contains no evidence indicating that the Lodge is a duly formed corporation. Penick contends that the record therefore contains no evidence indicating that the Lodge has standing to bring this action. Penick argues that the trial court should have dismissed this case for lack of *425 jurisdiction. See State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999) (“When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.”); see also Crutcher v. Williams, 12 So.8d 681, 635 (Ala.2008) (“A court is obligated to vigilantly protect against deciding cases over which it has no jurisdiction. ...”); Ex parte Smith, 438 So.2d 766, 768 (Ala.1983) (“Lack of subject matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of subject matter jurisdiction ex mero motu.” (citing City of Huntsville v. Miller, 271 Ala. 687, 688, 127 So.2d 606, 608 (1958))).
Regardless of whether the Lodge is a corporation, an unincorporated association, or some other kind of entity, it is undisputed that the Lodge lent Penick the money secured by the mortgage. It is undisputed that, as a result of Penick’s failure to pay the loan as he contracted to do, the Lodge has suffered direct financial injury. Thus, regardless of the Lodge’s organizational structure and corporate status, the Lodge seeks redress for an injury to its legally protected contractual rights; therefore, it has standing to bring this action. Rainbow Drive, 740 So.2d at 1027 (“Standing ... turns on “whether the party has been injured in fact and whether the injury is to a legally protected right.’ ” (quoting Romer v. Board of County Comm’rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting))); Smith v. Potts, 293 Ala. 419, 422, 304 So.2d 578, 580 (1974) (“One has standing to bring his complaint into court ‘if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case.’” (quoting Harman v. City & County of San Francisco, 7 Cal.3d 150, 159, 101 Cal.Rptr. 880, 886, 496 P.2d 1248, 1254 (1972); citing Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962))).
Penick argues that the Lodge could be a foreign corporation and that there is no evidence in the record to indicate that the Alabama Secretary of State has authorized the Lodge to do business in Alabama. Penick contends that, if the Lodge is a foreign corporation lacking a certificate to do business in Alabama from the Alabama Secretary of State, then it would have no standing to maintain an action in the courts of this State pursuant to § 10-2B-15.02(a), Ala.Code 1975.[8]
A foreign corporation’s failure to obtain authorization to do business in Alabama is a capacity defense and does not per se implicate standing and subject-matter jurisdiction. Archer Western Contractors, Ltd. v. Benise-Dowling & Assocs., Inc., 33 So.3d 1216, 1219 n. 4 (Ala.2009) (“[Section] 10-2B-15.02(a), Ala.Code 1975, does not preclude the courts of this state from exercising jurisdiction over actions brought by unauthorized foreign entities transacting business in Alabama for the purpose of enforcing their contracts.”); Moseley v. Commercial State Bank, 457 So.2d 967 (Ala.1984) (holding that a foreign corporation’s lack of authorization to do business in Alabama is a capacity defense that is waived unless timely asserted by specific negative averment); cf. Rainbow *426 Drive, 740 So.2d at 1028 (“ ‘Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.”’ (quoting National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798,127 L.Ed.2d 99 (1994))); Ex parte Smith, 438 So.2d 766, 768 (Ala.1983) (“Lack of subject matter jurisdiction may not be waived by the parties ....”); and Mobile, Alabama-Pensacola, Florida Bldg. & Constr. Trades Council v. Williams, 346 So.2d 964, 966 (Ala.1977) (Faulkner, J., dissenting) (“There is a difference between capacity to sue and standing to sue.”). Therefore, Penick’s arguments that the Lodge lacks standing to bring this action are without merit.
B. Capacity to Sue[9]
Relying extensively on Shepherd v. Birmingham Trust & Savings Co., 233 Ala. 320, 171 So. 906 (1937), Penick argues that the Lodge had the burden of specifically pleading and proving that it had the capacity to sue. Penick further argues that, under Shepherd, the allegation in the Lodge’s complaint that it was a corporation was insufficient to satisfy what Penick says was its burden to plead and prove its capacity to sue. Accordingly, Penick argues, the trial court should have granted Penick’s motion to dismiss the Lodge’s complaint.
In Shepherd, this Court noted that “[t]he rules of good pleading in equity require that the complainant must plead his character and capacity to sue.” 233 Ala. at 322, 171 So. at 908. The Shepherd Court further held that, if, “construing the averments of the bill most strongly against the pleader, it is uncertain in what capacity the complainant sues, the bill is subject to demurrer.” 233 Ala. at 323, 171 So. at 909. In addition, the Shepherd Court noted: “The name in which the complainant in this case sues ‘does not ex vi termino-rum, import that the’ complainant ‘is a corporation, rather than’ a partnership or ‘an unincorporated organization or association,’ and there is no presumption in its favor that it is one or the other.” 233 Ala. at 323,171 So. at 909. On these principles, and on the obsolete principle that “on, demurrer, the intendment is resolved against the pleader,”[10] the Shepherd Court sustained a demurrer. 233 Ala. at 323,171 So. at 909-10.
However, in 1973, this Court adopted the Alabama Rules of Civil Procedure. Rule 9(a), Ala. R. Civ. P., addresses the capacity to sue and provides:
“It is not necessary to aver the capacity of a party to sue ... or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue ..., the party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader’s knowledge.”
*427 Further, the Committee Comments on the 1978 Adoption of Rule 9 state:
“Rule 9(a) is based on the premise that capacity is not in issue in most cases, and that it should be raised by specific averment in the few cases where it is in issue rather than pleaded as a matter of course in all cases. Existing Alabama law had required the complaint to show affirmatively that the plaintiff was a legal entity capable of suing or being sued, if that was the fact. Buchman v. Grimes, 261 Ala. 388, 74 So.2d 443 (1954); Shepherd v. Birmingham Trust & Savings Co., 233 Ala. 320, 171 So. 906 (1937). The rule abolishes this requirement .... ”
In short, Rule 9(a) renders obsolete the holding in Shepherd that capacity to sue must be pleaded by specific averment in the complaint. In accordance with Rule 9(a), the burden was on Penick, not the Lodge, to assert the capacity-to-sue issue. Penick has provided no evidence and no legal authority to establish that the Lodge lacks capacity to sue. Accordingly, we will not reverse the judgment of the trial court in declining to dismiss the Lodge’s complaint for lack of capacity to sue.

C. Lack of Specificity of the Complaint

It is undisputed that Penick owns the real property at issue in this action, that Penick mortgaged the property, and that the Lodge holds the second mortgage on the property. It is undisputed that the mortgage originally described that property incorrectly but that a corrected mortgage was subsequently issued accurately describing the property. The record contains copies of both the original and the corrected mortgage documents. Those documents were properly before the trial court on the summary-judgment motion.
However, Penick argues that the trial court should have granted his motion to dismiss the Lodge’s complaint because the mortgage that was attached to the Lodge’s complaint was not the corrected mortgage and the property was not otherwise precisely and accurately described in the complaint. Penick also argues that the summary judgment in favor of the Lodge was improper because, according to Penick, the Lodge did not sufficiently aver in its complaint that it had fulfilled all conditions precedent to foreclosing on the mortgage and that it was willing to do equity. In support of these arguments, Penick relies on Shepherd, supra, which describes specific pleading requirements for complaints in actions on mortgages before the adoption of the Alabama Rules of Civil Procedure.[11]
Penick also relies extensively on the following rule set forth in Chandler v. Bodeker, 219 Ala. 357, 359, 122 So. 435, 436 (1929), another case predating the Alabama Rules of Civil Procedure:
“[A] general allegation of [contract] performance on the part of complainant is insufficient as against demurrer....
“... [T]he bill shall by averments of fact make certain to a common intent that a valid, enforceable contract exists, the terms thereof, and performance by *428 complainant on his part or a sufficient excuse for nonperformance, accompanied with averments showing he is able and willing to perform, and offers so to do.”
The adoption of the Alabama Rules of Civil Procedure rendered obsolete the specific pleading averments needed to overcome a demurrer in a contract action that are described in Shepherd and Chandler,[12] Penick’s extensive reliance on those cases is misplaced. See Rule 56(c)(3), Ala. R. Civ. P. (stating that summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law on the issues specifically set forth in the motion”). Therefore, we will not reverse the summary judgment on the authority of Shepherd and Chandler, because of an alleged lack of specificity of the complaint.

D. Construction of the Mortgage, the Notes, and the Modification Agreement

“In interpreting a contract, the ‘ “words of the agreement will be given their ordinary meaning.” ’ Hibbett Sporting Goods, Inc. v. Biernbaum, 391 So.2d 1027, 1029 (Ala.1980) (quoting Flowers v. Flowers, 334 So.2d 856, 857 (Ala.1976)).... ‘If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment. However, if the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury.’ McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853, 855 (Ala.1991) (citations omitted).”
Reeves Cedarhurst Dev. Corp. v. First Amfed Corp., 607 So.2d 184, 186-87 (Ala.1992).
Paragraph 2 of the modification agreement gives the Lodge the right to demand a deed in lieu of foreclosure in the event of default by Penick. Penick points out that paragraph 2 of the modification agreement also states: “[A]ll other terms and conditions of the Note and Mortgage which are not expressly modified hereby remain in full force and effect.... The *429 time of performance of all other covenants and conditions of the Note and Mortgage shall not be affected by this agreement.” Relying on this language, Penick argues that the modification agreement did not “expressly modify” the provisions relating to notice found in paragraph 10 of the notes and paragraphs 17 and 18 of the original mortgage. Penick contends that, in the event of a default, those provisions required the Lodge to provide Penick a detailed notice of default and of the right to reinstate, and to allow Penick 30 days in which to pay off the balance of the loan in the event of a default by transfer of a superior interest in the mortgaged property to a third party or, in the event of any other default, to cure any default before pursuing any remedies for default. It is undisputed that the Lodge did not follow the procedures outlined in paragraph 10 of the notes or paragraphs 17 and 18 of the original mortgage before demanding a deed in lieu of foreclosure.
However, paragraph 2 of the modification agreement states that, “[i]n the event [of] a default in the terms of the Note or Mortgage as modified, PENICK agrees to execute and deliver a Deed in Lieu of Foreclosure on written request of the [Lodge].” (Capitalization in original.) Thus, paragraph 2 unambiguously and “expressly” grants the Lodge an additional remedy “in the event of a default”: the right to obtain a deed in lieu of foreclosure upon written request.[13] Therefore, the modification agreement “expressly” modified any previous agreement between the parties that the Lodge could pursue no remedy for default unless it first followed certain notice procedures and gave Penick 30 days in which to pay off the loan or cure any default. The trial court did not err in holding that a written request was the only precondition applicable to the Lodge’s right to obtain a deed in lieu of foreclosure in the event of a default by Penick.
Penick argues that the modification agreement should be interpreted in light of Leo Math’s alleged assurances that the notice and right-to-cure provisions of the original mortgage were prerequisites to the Lodge’s right to demand a deed in lieu of foreclosure. Penick argues that parol evidence may be relied upon to resolve latent ambiguities in a contract or matters upon which a contract is silent. However, Penick’s arguments are inapposite because the modification agreement is neither silent nor ambiguous as to the Lodge’s right to obtain a deed in lieu of foreclosure upon written demand in the event of a default.
Penick also argues that, pursuant to paragraph 19 of the original mortgage, he had a right to reinstate the loans after the Lodge made its demand for a deed in lieu of foreclosure. Paragraph 19 provides that, after any default and “[notwithstanding ... acceleration,” Penick could reinstate the loan “at any time prior to the ... entry of a judgment enforcing this Mortgage ... if: (a) [Penick] pays [the Lodge] all sums which would be then due under this Mortgage [and] the Note[s] ... had no acceleration occurred; [and] (b) [Pen-ick] cures all breaches of any other covenants or agreements of [Penick] contained in this Mortgage.... ”
Penick contends that he timely and properly attempted to reinstate the loans by paying the sums necessary to bring the loans current. Penick further *430 argues that he attempted to exercise this right to reinstate the loans by tendering a cashier’s check for an amount that would make the loans current. However, in addition to paying the sums necessary to bring the loans current, paragraph 19 conditions the reinstatement of the loans on Penick’s curing “all breaches of any other covenants and agreements ... contained in [the] Mortgage.” In its summary-judgment order, the trial court found that “there are at least three undisputed matters of default: monthly payments due have not been paid on a timely basis; the payments are in arrears by more than thirty (30) days; and a tax lien has been filed against the property.” (Emphasis added.) Penick wholly fails to address the trial court’s finding that the existence of the tax lien represented a default. Penick does not cite any law, contractual provision, or record evidence to demonstrate that he had a right to reinstate the loans or to refuse to sign the deed in lieu of foreclosure despite his utter failure to cure his tax-related default. “[I]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party....” Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994).

E. Judicial Estoppel

Penick argues that the Lodge is judicially estopped from demanding a deed in lieu of foreclosure because the Lodge filed a claim in Penick’s bankruptcy case seeking regular monthly payments. Pen-ick states that, on October 24, 2006, he “dismissed the Chapter 18 petition” and on November 7, 2006, he gave the Lodge a cashier’s check for the full amount of the arrearage, which the Lodge rejected. In support of this argument, Penick quotes Edwards v. McCord, 461 So.2d 1319 (Ala.1984), for the general proposition that “ ‘[t]he law is settled in Alabama that a party who has, with knowledge of the facts, assumed a particular position in a judicial proceeding is estopped from assuming a position inconsistent to the first one to the prejudice of an adverse party.’ ” 461 So.2d at 1319 (quoting Russell v. Russell, 404 So.2d 662, 665 (Ala.1981)(emphasis added)).
However, Penick cites no evidence or legal authority to establish that the elements of judicial estoppel are met in this case. See Edwards, 461 So.2d at 1320 (“It is essential, in order to invoke the operation of the legal doctrine of estoppel, that the inconsistent position first asserted must have been successfully maintained.”). In particular, Penick makes no attempt to demonstrate that he would be prejudiced if the Lodge sought a remedy inconsistent with the Lodge’s claim for monthly payments in Penick’s bankruptcy action, which apparently was dismissed without adjudication of the Lodge’s claim. See generally Edwards, 461 So.2d at 1320 (“ ‘It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.’ ” (quoting Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1894))); see also Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (“ ‘[I]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994))).

F. Promissory Estoppel

Penick argues that, “if Leo Math knew [that the Lodge was] not going to *431 give the thirty-days right to cure and Pen-ick unknowingly expected the thirty-days right to cure and relied on it, then the Lodge is estopped from asserting the nonexistence of the thirty-day right to cure.” In support of his argument, Penick cites no law other than the following general proposition:
“ ‘An estoppel ... has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.’ ”
Mazer v. Jackson Ins. Agency, 340 So.2d 770, 773 (Ala.1976) (quoting Dobbs, Remedies § 2.3 (1973)).
Penick cites no evidence indicating or legal authority to support his bare assertion that the general proposition cited above applies in this case. For example, he cites no evidence indicating that he relied on Leo Math’s representations regarding the right to cure any default. His unsworn arguments are not evidence. Ex parte Alabama Dep’t of Mental Health & Mental Retardation, 937 So.2d 1018, 1026 (Ala.2006) (“Argument of counsel is not evidence.”); American Nat’l Bank & Trust Co. of Mobile v. Long, 281 Ala. 654, 656, 207 So.2d 129, 132 (1968) (noting that an “unsworn statement of counsel was not evidence”); and Ex parte Russell, 911 So.2d 719, 725 (Ala.Civ.App.2005) (“The unsworn statements, factual assertions, and arguments of counsel are not evidence.” (citing Singley v. Bentley, 782 So.2d 799, 803 (Ala.Civ.App.2000))).
In short, Penick’s promissory-estoppel argument consists of nothing more than bare citations to generic legal principles, and he has made no meaningful attempt to demonstrate that those legal principles apply to the facts of this case. Therefore, Penick’s promissory-estoppel argument is wholly insufficient to sustain a reversal of the trial court’s judgment. Long v. Bryant, 992 So.2d 673, 683 (Ala.2008) (“Rule 28(a)(10), Ala. R.App. P., requires that an argument in an appellant’s (or cross-appellant’s) brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ ”); Dykes v. Lane Trucking, Inc., 652 So.2d at 251 (“We have unequivocally stated that it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” (citing Spradlin v. Spradlin, 601 So.2d 76 (Ala.1992))).

G. Duress

Penick argues that the Lodge’s foreclosure action in 2002 was wrongful because, according to the undisputed evidence, the September 17, 2002, notice of foreclosure did not inform Penick of the amount due or give him 30 days in which to cure the default. Therefore, Penick argues, he executed the modification agreement on October 16, 2002, under economic duress.
“[T]o demonstrate a prima facie case of economic duress, a party must show ‘(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; (3) the absence of any reasonable alternative to the terms presented by the wrongdoer.’ ” Wright Therapy Equip., LLC v. Blue Cross & Blue Shield of Alabama, 991 So.2d 701, 707 (Ala.2008) (quoting International Paper Co. v. Whilden, 469 So.2d 560, 562 (Ala.1985)). Penick cites no evidence in the record showing that his only reasonable alternative to the allegedly wrongful fore *432 closure was to sign the modification agreement as it was presented to him. Therefore, Penick has not demonstrated the existence of a genuine issue of material fact as to whether he signed the modification agreement under duress.[14] Long, 992 So.2d at 688 (“Rule 28(a)(10), Ala. R.App. P., requires that an argument in an appellant’s (or cross-appellant’s) brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ ”).

H. Creation of a Problematic Cotenancy

Penick argues that the trial court’s judgment, which requires him to sign a deed in lieu of foreclosure, is inappropriate in light of the circumstances of this case. According to Penick, the deed in lieu of foreclosure will create a problematic cotenancy among the Lodge, the City of Birmingham (which holds a first mortgage on the property), and the purchaser at the tax sale. In support of this argument, Penick cites 1631 Second Avenue North, L.L.C. v. Raine, 963 So.2d 71 (Ala.2007). In Raine, “the trial court, after considering the circumstances of this case, held that ‘the court would be causing more problems for these parties than it would solve’ ” if it ordered specific performance of a real-estate contract because such an order would result in a cotenancy among strangers. 968 So.2d at 75 (emphasis added). This Court affirmed the trial court’s judgment, stating: “Given the circumstances of this case, we find no palpable error by the trial court in declining to order specific performance.... ” 963 So.2d at 75-76 (emphasis added).
Penick, however, has not articulated in his brief how specific performance of the agreement in this case could result in a “cotenancy,” much less a “problematic” one. Further, he has not cited any legal authority to support his bare assertion that specific performance will result in a problematic cotenancy. We are unable to address the merits of an Penick’s argument regarding the creation of a “problematic cotenancy” because he has failed to articulate that argument, and he presents no authority in support of it. See Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251, 253 (Ala.1985).

I. Ejectment Count

Penick argues that summary judgment was not proper on the Lodge’s ejectment count because, he says, the undisputed evidence demonstrates that the Lodge did not have legal title to or possession of the property at the time it filed this action. Ala. Code 1975, § 6-6-280 (“[T]he complaint [in an ejectment action] is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto ... and that the defendant entered thereupon and unlawfully withholds and detains the same.”); Atlas Subsidiaries of Fla., Inc. v. Kornegay, 288 Ala. 599, 601, 264 So.2d 158, 161 (1972) (noting that a statutory action in the nature of ejectment exists under two alternatives: “The first such alternative is where the complaint alleges that the plaintiff was possessed of the premises and the defendant entered thereupon and unlawfully withholds and detains the same. The other alternative is where the complaint alleges that the plaintiff has the legal title to the lands and the defendant entered there *433 upon and unlawfully withholds and detains the same.”); see also Cadle Co. v. Shabani, 950 So.2d 277, 279 (Ala.2006) (“[T]o maintain an action for ejectment, a plaintiff must allege either possession or legal title ....”).
The Lodge argues, without citation to legal authority, that, at the time the action was filed, it held an equitable title to the property that was superior to Penick’s legal title. Without citing legal authority, the Lodge further argues that proof that the Lodge held a superior equitable title at the time it filed the complaint for ejectment, coupled with proof of an immediate right to possession, is sufficient to entitle the Lodge to an order of ejectment. Butler, 871 So.2d at 20 (“ ‘[I]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undeli-neated general propositions not supported by sufficient authority or argument.’ ” (quoting Dykes, 652 So.2d at 251)).
It is undisputed that, at the time the trial court entered the summary judgment, the Lodge did not have possession of, or legal title to, the property. Accordingly, the trial court’s judgment in favor of the Lodge on the ejectment count is due to be reversed.

J. Other Arguments

We find no merit in any of Penick’s remaining arguments, which he fads to support with citation to the record or sufficient legal authority.

IV. Conclusion

For the reasons stated above, the trial court’s summary judgment on the ejectment count is reversed. In all other respects, the judgment of the trial court is affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion.
APPLICATION OVERRULED; OPINION OF NOVEMBER 13, 2009, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
SMITH, PARKER, and SHAW, JJ„ concur.
MURDOCK, J., concurs specially.

. Penick represents himself in this action.

. Penick is a member of the Lodge.

. The City of Birmingham holds a first mortgage on Penick’s law-office property.

. The description in the original mortgage of the mortgaged property was incorrect. A corrected mortgage with the proper description of the property was recorded on August 11, 1991.

. The record does not include a document dated October 26, 2006, making such a request.

. The record does not clearly indicate whether the trial court expressly ruled on Penick's motion to dismiss.

. The Lodge’s counsel argue — without supporting evidence — that the Lodge was incorporated in 1900 as the "Most Worshipful Grand Lodge of Free & Accepted Ancient York Masons of the United States of North America — colored.” However, " ‘[m]otions and arguments of counsel are not evidence.’ ” Fountain Fin., Inc. v. Hines 788 So.2d 155, 159 (Ala.2000) (quoting Williams v. Akzo Nobel Chems., Inc., 999 S.W.2d 836, 845 (Tex. App.1999)).

. Section 10-2B-15.02(a) provides:
"A foreign corporation transacting business in this state without a certificate of authority ... may not maintain a proceeding in this state without a certificate of authority. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or by any person claiming through or under the foreign corporation by virtue of the contract or agreement....”

. See Dennis v. Magic City Dodge, Inc., 524 So.2d 616, 618 (Ala.1988) (noting that capacity to sue is " ‘a party’s personal right to come into court, and should not be confused with the question of whether a party has an enforceable right or interest or is the real party in interest' ” (quoting 6 C. Wright & A. Miller, Federal Practice and Procedure § 1559 (1971))); see also Moseley, 457 So.2d at 969 (noting that the defense of lack of capacity is waived unless specifically asserted by the party seeking to raise the issue).

. See Rule 8, Ala. R. Civ. P., Committee Comments on 1973 Adoption ("Rule 8 is expressly intended to repudiate the long standing doctrine in Alabama of construing the pleadings strictly against the pleader, when ruling on demurrer.”).

. See Shepherd, 233 Ala. at 323, 171 So. at 910:
"Ground (d) of the demurrer was well taken. The averment that the mortgage and notes ‘were duly transferred and assigned on December 15, 1927, by the said Wilmert H. Carroll to Wm. D. Jelks [the mortgagee], as shown by transfer recorded in the Probate Office of Jefferson County,’ when construed most strongly against the pleader, is not an affirmative averment that said mortgage and notes were duly transferred so as to vest in said Jelks the title or property in said chose in action, but that they appear to have been so transferred by reference to said recorded assignment, which might be efficacious or not to vest such title.”

. See Rule 7(c), Ala. R. Civ. P. ("Demurrers, Pleas, etc., Abolished. Demurrers, pleas, and exceptions for insufficiency of a pleading shall not be used.”); Rule 8(a), Ala. R. Civ. P. ("A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks.”); Rule 8(c), Ala. R. Civ. P. ("Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively ... failure of consideration, ... payment, ... and any other matter constituting an avoidance or affirmative defense.”); Rule 8(e), Ala. R. Civ. P. ("Pleading to Be Concise and Direct; Consistency. ... Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.”); Rule 8(f), Ala. R. Civ. P. ("Construction of Pleadings. All pleadings shall be so construed as to do substantial justice.”); Rule 9(c), Ala. R. Civ. P. ("In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.” (emphasis added)); and Rule 11, Ala. R. Civ. P. ("Except when otherwise specifically provided by rule or statute, pleadings, motions, or other papers need not be verified or accompanied by affidavit.... The signature of an attorney constitutes a certificate by the attorney ... that to the best of the attorney’s knowledge, information, and belief there is good ground to support it.... ”).

. Although not argued by the parties, and therefore not relied upon here, paragraph 12 of the original mortgage provides: "Remedies Cumulative. All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently, or successively.”

. Penick alleges that, under Webb v. Globe Securities Co., 203 Ala. 226, 82 So. 476 (1919), the burden rests on the Lodge, as the mortgagee, to make a prima facie showing of the absence of duress. However, Webb's pre-Alabama Rules of Civil Procedure holding as to the burden on the issue of duress is obsolete. See, e.g., Rule 8(c), Ala. R. Civ. P. (listing "duress” as an affirmative defense).