Rel: November 22, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2023-0904

_____

**Gary Everett Martin**

**v.**

**Joseph T. Scarborough, Jr.; Scarborough & Griggs, LLC; and BBVA USA Bancshares, Inc.**

**Appeal from Lee Circuit Court**
**(CV-19-900672)**

BRYAN, Justice.

Gary Everett Martin appeals from a summary judgment entered by

the Lee Circuit Court in favor of Joseph T. Scarborough, Jr.; Scarborough

& Griggs, LLC ("S&G"); Scarborough & Weldon, LLC ("S&W"); and BBVA USA Bancshares, Inc., formerly known as Compass Bank ("BBVA").[1]  Scarborough and S&G are hereinafter referred to as "the Scarborough parties."[2]  For the reasons explained below, we affirm the circuit court's judgment in part, reverse the judgment in part, and remand this cause for further proceedings.

Background

In May 2008, Martin obtained from BBVA a home-equity line of credit ("the HELOC") from BBVA with a maximum credit line of $50,000. The HELOC was secured by a mortgage interest in certain residential real property ("the property").

In June 2008, Martin engaged the Scarborough parties to provide him with legal representation in a divorce action; the property was a

---

[1]The record indicates that PNC Bank, N.A., is the successor in interest to BBVA, but BBVA contended in the circuit court that the action could proceed as to it, pursuant to Rule 25(c), Ala. R. Civ. P., which provides, in relevant part: "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

[2]In his appellate brief, Martin asserts: "Scarborough & Weldon, LLC[,] was also made a party; however, Martin is not prosecuting this appeal against Scarborough & Weldon, LLC."  Martin's brief at 4 n.1.

primary asset in the divorce action. On June 18, 2012, Martin executed a promissory note in favor of S&G for the payment of legal fees; the initial principal balance of the promissory note was $14,573.03. Martin also granted S&G a mortgage interest in the property as security for the promissory note. The attorney-client relationship between the Scarborough parties and Martin was terminated in June 2013. S&G was eventually dissolved, and the promissory note and the mortgage interest were assigned to Scarborough in May 2018.

In June 2009, BBVA allegedly made unauthorized distributions to Martin's former wife from the HELOC. After later concluding that Martin had defaulted on his obligations under the HELOC, BBVA conducted a foreclosure sale on June 28, 2019. Scarborough purchased the property at the foreclosure sale with a bid of $34,929.77, which was $1 more than the payoff amount for Martin's HELOC balance. On August 8, 2019, Scarborough sent Martin a letter stating that, as of June 28, 2019, the amount that Martin owed Scarborough under the promissory note that Martin had originally executed in favor of S&G was $97,500.50.

Scarborough commenced this ejectment action in November 2019. Scarborough alleged that Martin had refused to vacate the property. According to Scarborough, Martin had forfeited his redemption right under § 6-5-251, Ala. Code 1975. Scarborough requested a judgment awarding him possession of the property and declaring Martin's statutory right of redemption to be forfeited.

Martin answered the complaint, asserting affirmative defenses and, pursuant to Rule 13(h), Ala. R. Civ. P., counterclaims, naming as defendants the Scarborough parties; Martin sought awards of compensatory and punitive damages. In an amended pleading, Martin also asserted counterclaims against BBVA.

Martin's initial pleading asserted the following counterclaims against the Scarborough parties: (1) negligence; (2) wantonness; (3) slander of title; (4) fraudulent misrepresentation; (5) fraudulent suppression; (6) rescission; and (7) a request for an accounting. An amended pleading asserted the following additional counterclaims: (8) wrongful foreclosure against BBVA; (9) breach of fiduciary duty against BBVA; (10) civil conspiracy against all the counterclaim defendants collectively; (11) unjust enrichment against BBVA; (12) a request for the

4

establishment of a constructive trust on any moneys or benefits to which Martin was entitled; (13) negligence against BBVA; (14) wantonness against BBVA; and (15) breach of contract against BBVA. Martin later amended his pleading again to assert the following additional counterclaims: (16) a request to redeem the property and (17) tortious interference with Martin's contract with BBVA against the Scarborough parties.

In January 2023, the Scarborough parties filed a motion for a summary judgment. BBVA also moved for a summary judgment. Martin responded to the motions, and the movants replied to Martin's response. On June 7, 2023, Martin filed a "final memorandum brief in opposition to [the] motions for [a] summary judgment."

It appears that the circuit court conducted a hearing regarding the summary-judgment motions, but no transcript of the hearing is included in the record on appeal. On August 16, 2023, the circuit court entered an order that provided, in relevant part:

> "The Court finds that [Scarborough] is granted [a s]ummary [j]udgment on his ejectment action[,] as … Martin failed to comply with § 6-5-251[, Ala. Code 1975,] and thereby waived any right to redemption of the subject property.

"Further, … Scarborough[,] BBVA[, S&G, and S&W] are granted [a s]ummary [j]udgment against … Martin's claims. Any claims against Scarborough[, S&G, or S&W] are time barred by the [Alabama Legal Services Liability Act]. All claims against BBVA are dismissed[,] as any claims regarding distributions of the [HELOC] are time barred, and Martin provides no substantial evidence to support his other claims against BBVA individually and jointly with Scarborough."

Martin thereafter filed a postjudgment motion to alter, amend, or vacate the circuit court's August 16, 2023, order pursuant to Rule 59(e), Ala. R. Civ. P.

On October 9, 2023, a second law firm representing Scarborough filed what was styled as a "motion for [a] summary judgment," stating, among other things, that, since the entry of the circuit court's August 16, 2023, order, Scarborough "ha[d] made demand for possession of the [property] and [Martin] ha[d] refused to vacate the same." Scarborough asserted that "[Martin was] in possession of said property and [had] wrongfully and unlawfully refuse[d] to surrender possession of the same." The motion requested the entry of a "summary judgment" against Martin "for possession of [the property], along with an [o]rder declaring the statutory one year right of redemption to be void, forfeited[,] and waived by [Martin]."

On November 3, 2023, the circuit court entered an order denying Martin's postjudgment motion to alter, amend, or vacate the circuit court's August 16, 2023, order. Martin thereafter filed a notice of appeal.

After Martin submitted his principal appellate brief in this Court, the law firm that had filed Scarborough's second motion for a summary judgment in the circuit court filed a motion in this Court contending that this case is "due to be remanded to the circuit court to dispose of the remaining claim for possession and entry of final order." Scarborough's remand motion at 2. Thereafter, the original law firm representing Scarborough filed an appellate brief on behalf of the Scarborough parties addressing the merits of Martin's appeal. BBVA also submitted an appellate brief. Martin did not file a reply brief responding to the arguments made by the Scarborough parties and by BBVA on appeal.

Analysis

The first issue we must address is whether the circuit court has entered a final judgment in this action because "without a final judgment this court is without jurisdiction to hear an appeal." Cates v. Bush, 293 Ala. 535, 537, 307 So. 2d 6, 8 (1975). "'[I]n order to terminate a civil action filed in an Alabama court, the [circuit] court must enter a final

7

judgment in that action,' <u>i.e.</u>, one that complies with the requirements of Rule 58(b), Ala. R. Civ. P. <u>Ex parte Wharfhouse</u>, 796 So. 2d [316,] 320 [(Ala. 2001)]." <u>Deutsche Bank Nat'l Tr. Co. v. Karr</u>, 306 So. 3d 882, 887 (Ala. 2020).

In pertinent part, Rule 58(b), Ala. R. Civ. P., provides:

> "(b) Sufficiency of Order or Judgment. An order or a judgment need not be phrased in formal language nor bear particular words of adjudication. A written order or a judgment will be sufficient if it is signed or initialed by the judge ... and indicates an intention to adjudicate, considering the whole record, and if it indicates the substance of the adjudication."

Regarding finality, the only question presented in this case is whether the circuit court has sufficiently adjudicated Scarborough's ejectment claim. As noted above, in its August 16, 2023, order, the circuit court explicitly stated that it was entering a summary judgment for Scarborough on his ejectment claim. In the remand motion that Scarborough has filed in this Court, however, he appears to construe the circuit court's August 16, 2023, order as nonfinal because "said order does not contain language specific to possession and does not grant [Scarborough] a writ of possession." Scarborough's remand motion at 1. Thus, Scarborough's contention appears to be that, to sufficiently

8

adjudicate his ejectment claim, the circuit court's order must have specifically awarded Scarborough possession of the property.

However, this Court has noted that "the right of immediate possession … is the gravamen of an ejectment action." Gholson v. Watson, 495 So. 2d 593, 597 (Ala. 1986)(citing § 6-6-280, Ala. Code 1975). In other words, "[t]he action in the nature of ejectment … is a possessory action …." State v. Broos, 257 Ala. 690, 696, 60 So. 2d 843, 849 (1952). Consequently, when considering a judgment in favor of the plaintiffs regarding an action in the nature of ejectment, this Court has reasoned that, "although not expressly stated, implicit in the final judgment is the trial court's determination that the plaintiffs were entitled to immediate possession of the real property in issue." Jones v. Regions Bank, 25 So. 3d 427, 440 (Ala. 2009).

It appears that Scarborough's October 9, 2023, "motion for [a] summary judgment" seeks enforcement of the circuit court's August 16, 2023, order. However, a trial court's judgment can be final even if further proceedings are required to effectuate the judgment.

> "'"A judgment that conclusively determines all of the issues before the court and ascertains and declares the rights of the parties involved is a final judgment."' [Pratt Cap., Inc. v.] Boyett, 840 So. 2d [138,] 144 [(Ala. 2002)](quoting Nichols

9

> v. Ingram Plumbing, 710 So. 2d 454, 455 (Ala. Civ. App. 1998)). 'A judgment that declares the rights of the parties and settles the equities is final even though the trial court envisions further proceedings <u>to effectuate the judgment</u>.' <u>Wyers v. Keenon</u>, 762 So. 2d 353, 355 (Ala. 1999). Otherwise stated, a judgment that is 'definitive of the cause in the court below, leaving nothing further to be done, <u>save [its enforcement]</u>,' is a final judgment. <u>Ex parte Gilmer</u>, 64 Ala. 234, 235 (1879)."

<u>Faith Props., LLC v. First Com. Bank</u>, 988 So. 2d 485, 490-91 (Ala. 2008)(emphasis added). Therefore, by entering a summary judgment for Scarborough on his ejectment claim, the circuit court's August 16, 2023, order sufficiently adjudicated that claim -- in addition to adjudicating all of Martin's counterclaims -- and was, therefore, a final judgment. Consequently, by separate order, we have denied Scarborough's motion to remand this case for the entry of a final judgment.

Next, we turn to the substantive issues that Martin has raised on appeal. First, Martin argues that the circuit court erred by entering a summary judgment in favor of Scarborough regarding his ejectment claim. Second, Martin argues that the circuit court erred by determining that he had waived his right of redemption. Third, Martin argues that the circuit court erred by determining that his counterclaims against the Scarborough parties were time-barred under the Alabama Legal Services

10

Liability Act ("the ALSLA"), § 6-5-570 et seq., Ala. Code 1975. Fourth, Martin argues that the circuit court erred by entering a summary judgment in favor of BBVA regarding Martin's breach-of-contract counterclaim. Finally, Martin argues that the circuit court erred by determining that he had failed to produce substantial evidence in support of all of his other counterclaims.

The following standards of review apply to our consideration of the circuit court's judgment.

> "This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So. 2d 870, 871 (Ala. 1989)."

11

Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004). In the context of a summary judgment, we review questions of law de novo. Moore v. Moore, 297 So. 3d 359, 362 (Ala. 2019).

For the reasons explained below, we conclude that a genuine issue of material fact exists regarding whether BBVA's foreclosure sale was invalid. Therefore, we reverse the circuit court's judgment insofar as it entered a summary judgment in favor of Scarborough on his ejectment claim, and we pretermit consideration of Martin's appellate argument regarding his statutory right of redemption. See Fullilove v. Home Fin. Co., 678 So. 2d 151, 154 (Ala. Civ. App. 1996)("[I]f … the mortgage foreclosure is defective, one would never reach the issue of redemption."). However, for the reasons also explained below, we affirm the circuit court's judgment with respect to Martin's counterclaims against the Scarborough parties and BBVA.

I. Foreclosure Sale

As an affirmative defense to Scarborough's ejectment claim, Martin asserted in the circuit court that the foreclosure sale had been "done unlawfully, fraudulently, negligently, wantonly and/or in bad faith" and that Scarborough's resulting foreclosure deed was void. "[I]rregularities

in the foreclosure process that would render the foreclosure sale <u>void</u> may be raised as affirmative defenses to an ejectment action." <u>Campbell v. Bank of America, N.A.</u>, 141 So. 3d 492, 500 (Ala. Civ. App. 2012). "[I]f the purchase price is so inadequate as to shock the conscience and raise a presumption of fraud, the inadequacy is a circumstance that may render the foreclosure sale <u>void</u> in Alabama." <u>Id.</u> at 499.

On appeal, Martin argues that Scarborough's bid of $34,929.77 at BBVA's foreclosure sale constituted approximately 15% of the property's fair market value. Neither Scarborough nor BBVA dispute this valuation.

> "The general rule is that, 'where the price realized at the sale is so inadequate as to shock the conscience, it may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside.' 27 Cyc. 1508.
>
> "And, although mere inadequacy of price is not sufficient to that end, it is 'always a circumstance to be considered in connection with other grounds of objection to the sale, and will be sufficient to justify setting the sale aside, when coupled with any other circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property.' 27 Cyc. 1508; <u>Holdsworth v. Shannon</u>, 113 Mo. 508, 21 S.W. 85, 35 Am. St. Rep. 719 [(1893)], where the subject is discussed quite fully, with a review of many pertinent cases; 2 Jones on Mortgages (6th Ed.) 1670.

13

"The remedial action of courts in such cases is grounded upon the duty of the mortgagee, as stated by Shaw, C.J., in Howard v. Ames, 3 Metc. (44 Mass.) [308,] 311 [(1841)]:

"'In executing such power, he becomes the trustee of the debtor, and is bound to act bona fide, and to adopt all reasonable modes of proceeding, in order to render the sale most beneficial to the debtor.'

"The decided cases indicate that in general a price less than one-third of the value of the land will be regarded as grossly inadequate, but, of course, there is no definite rule or basis for such a conclusion, and each case must be judged by its own circumstances. But, when it is not more than one-tenth of its actual value, we think it is upon its face so grossly inadequate as to shock the judicial conscience and justifies the setting aside of the sale."

Hayden v. Smith, 216 Ala. 428, 430-31, 113 So. 293, 295 (1927).

Among other cases, Martin cites Berry v. Deutsche Bank National Trust Co., 57 So. 3d 142 (Ala. Civ. App. 2010), in support of his argument. In Berry, the Court of Civil Appeals noted its precedent holding the following:

"[W]hen a plaintiff in an ejectment action claims title to the property by virtue of its having purchased the property at a foreclosure sale, the existence of a genuine issue of material fact regarding the validity of the foreclosure sale will preclude the entry of a summary judgment in favor of the plaintiff."

Id. at 147. Applying the foregoing principle to the circumstances presented there, the Court of Civil Appeals reasoned as follows in Berry:

14

"'"[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."' Dow v. Alabama Democratic Party, 897 So. 2d [1035,] 1039 [(Ala. 2004)](quoting West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989)). We conclude that fair-minded persons in the exercise of impartial judgment could reasonably infer from the 2008 tax notice that the market value of the property was $84,800 when Deutsche Bank sold the property to itself for $33,915 at the foreclosure sale. Accordingly, we conclude that the 2008 tax notice constituted substantial evidence establishing that fact for purposes of Deutsche Bank's summary-judgment motion. If satisfactorily proven at trial, that fact would justify a determination that the foreclosure sale was invalid on the ground that the price realized at the foreclosure sale was so low in relation to the market value of the property as to shock the conscience, which would constitute an affirmative defense to Deutsche Bank's ejectment claim."

Id. at 149.

In this case, Scarborough purchased the property at BBVA's June 28, 2019, foreclosure sale with a bid of $34,929.77, which was $1 more than the payoff amount for Martin's HELOC balance. In opposition to the summary-judgment motions filed by the Scarborough parties and BBVA, Martin produced evidence indicating that, on June 4, 2019, a "broker's price opinion"[3] had been completed indicating that the property

---

[3]In her deposition, Rosalyn London, a BBVA employee, testified that BBVA had ordered a broker's price opinion "right before the foreclosure sale … to confirm the value of the property."

15

had a "Current Market Price 'As Is'" of $225,000. The "Quick Sale Price" listed on the form was $210,000. Consistent with the broker's price opinion, BBVA's "Bid Sheet" listed a "Net Appraised Value" for the property as $210,000. Thus, according to BBVA's valuation, the sale price realized at the June 28, 2019, foreclosure sale was approximately 16.6% of the fair market value of the property.

As noted above, "[t]he decided cases indicate that in general a price less than one-third of the value of the land will be regarded as grossly inadequate, but, of course, there is no definite rule or basis for such a conclusion, and each case must be judged by its own circumstances." Hayden, 216 Ala. at 431, 113 So. at 295. In Berry, the Court of Civil Appeals concluded that a sale price of approximately 40% of the property's fair market value was sufficient to create a genuine issue of material fact regarding whether the foreclosure sale was invalid on the ground that the price realized at the foreclosure sale was so low in relation to the fair market value of the property as to shock the conscience. Similarly, we conclude that the sale price in this case, which was approximately 16.6% of the property's fair market value, constitutes

16

substantial evidence creating a genuine issue of material fact regarding whether the foreclosure sale should be set aside as void.

Therefore, we reverse the portion of the circuit court's judgment entering a summary judgment for Scarborough on his ejectment claim, and we remand this case for further proceedings concerning that claim. During a trial of that claim, the fact-finder may consider, in support of Martin's affirmative defense, evidence of the sale price and "'any other circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property,'" that would justify setting aside the foreclosure sale. Hayden, 216 Ala. at 431, 113 So. at 295 (citation omitted). In so doing, this case may be "judged by its own circumstances." Id.

## II. The ALSLA

As noted above, the circuit court determined that all of Martin's counterclaims asserted against the Scarborough parties were time-barred under the ALSLA. Martin raises several intermingled arguments in this part of his appellate brief; we have divided them into subparts below for the sake of clarity. However, we start by noting the relevant text of § 6-5-574, Ala. Code 1975, which provides:

17

"(a) All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided, further, that in no event may the action be commenced more than four years after such act or omission or failure …."

a. Arising Under the ALSLA

On appeal, Martin first argues that his "[counter]claims against the Scarborough [p]arties do not arise out of and are not based on a breach of the applicable standard of care." Martin's brief at 34. Martin essentially argues that his counterclaims against the Scarborough parties are not governed by the ALSLA.

We do not consider this argument as a potential ground for reversing the circuit court's judgment. In his response to the summary-judgment motion filed by the Scarborough parties, Martin conceded the following:

"Concerning whether Martin's claims are subject to the [ALSLA], the answer is, in large part, yes. The [ALSLA] applies only to actions against legal service providers alleging a breach of their duties in providing legal services. … However, it is clear that common-law and statutory claims such as breach of a duty, negligence, misrepresentation and

the like are all subsumed into a single cause of action under the [ALSLA] if the action arises out of a breach of the attorney's duties in providing the legal services. ... This action finds its origin there. Accordingly, and as Martin's actions against the Scarborough [parties], at least in large part[,] began with the Scarborough [parties'] June 18, 2012, acquisition of the [promissory n]ote and the [second m]ortgage and progressed as continuous torts, <u>Martin agrees with the Scarborough [parties]' position that the compulsory counterclaims advanced are subsumed and covered by the [ALSLA]</u>."

(Emphasis added.)

In his "final memorandum brief in opposition to [the] motions for [a] summary judgment," Martin stated that he was "withdraw[ing]" certain contentions made in his earlier brief. It is unclear precisely which of his previous contentions Martin intended to withdraw in that filing. Apparently, that issue was discussed at a hearing in the circuit court, but there is no transcript of that hearing in the record. Although Martin's "final memorandum brief in opposition to [the] motions for [a] summary judgment" did purport to alter his ALSLA counterclaims in some respect, he did not clearly assert the argument he now raises on appeal, namely, that he intended to assert counterclaims against the Scarborough parties entirely outside the ALSLA.

19

In his postjudgment motion, Martin asserted an argument that more closely resembles the argument he now raises on appeal. His postjudgment motion also contained a footnote that stated: "<u>To the extent Martin has engaged in arguments as if the ALSLA is applicable to any claims outside of the circumstances surrounding the acquisition of the [promissory n]ote and [s]econd [m]ortgage, the same are, and/or have been withdrawn, as said claims simply are not subject to the terms and provisions of the ALSLA</u>." (Emphasis in original.)

Martin's postjudgment motion also referenced oral arguments in the circuit court, but, again, no transcript of those arguments has been provided to this Court. Martin's notice of appeal indicates that he did not order a transcript. See Rule 10(b), Ala. R. App. P. See also Cooper & Co. v. Lester, 832 So. 2d 628, 632 (Ala. 2000)("The duty is on the appellant[] to include in the record on appeal those materials necessary for valid review."); and Ex parte Frazier, 758 So. 2d 611, 616 (Ala. 1999)(" 'It is the appellant's duty to provide this court with a complete record on appeal.' " (quoting Patrick v. State, 680 So. 2d 959, 961 (Ala. Crim. App. 1996))). Thus, from all that appears in the record before this Court, Martin raised this precise argument for the first time in his postjudgment motion.

20

> "'"[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so."' Special Assets, L.L.C. v. Chase Home Fin., L.L.C., 991 So. 2d 668, 678 (Ala. 2007)(quoting Green Tree Acceptance, Inc. v. Blalock, 525 So. 2d 1366, 1369 (Ala. 1988))."

Espinoza v. Rudolph, 46 So. 3d 403, 416 (Ala. 2010).

Based on the record before us, there is no indication that the circuit court considered the new argument raised in Martin's postjudgment motion on this issue, which argument appears to have directly contradicted Martin's earlier concessions. Under these circumstances, we conclude that the circuit court had the discretion to determine that Martin's failure to raise the argument before his postjudgment motion was not justified. See Green Tree Acceptance, Inc. v. Blalock, 525 So. 2d 1366, 1370 (Ala. 1988). Therefore, we will not consider that argument on appeal as a ground for reversing the circuit court's judgment, and we treat all of Martin's counterclaims against the Scarborough parties as arising under the ALSLA.

b. Accrual of Action

As noted above, Martin asserted in the circuit court that his "actions against the Scarborough [parties], at least in large part[,] began with the Scarborough [parties'] June 18, 2012, acquisition of the

21

[promissory n]ote and the [second m]ortgage and progressed as continuous torts." On appeal, Martin argues that his claims against the Scarborough parties did not accrue until he suffered an injury, which he says did not occur until BBVA's June 2019 foreclosure.

Totally absent from Martin's brief is any discussion of this Court's recent decision in <u>Fox v. Hughston</u>, 382 So. 3d 1207, 1212 (Ala. 2023), in which this Court explained:

> "[T]here is a split of authority in our caselaw concerning when the statute-of-limitations period for a legal-malpractice action will begin to run. On the one hand, our caselaw has applied the 'damage' approach, under which the limitations period begins to run from the date on which the client bringing the legal-malpractice action first sustained an injury or damage. On the other hand, our caselaw also has applied the 'occurrence' approach, under which the limitations period begins to run from the date on which the act or omission giving rise to the claim occurred and not when the client first suffered damage."

In <u>Fox</u>, the Court determined that it did not need to "elect between these approaches in th[at] case because, given the undisputed facts, the limitations period provided in the ALSLA bar[red Erica Rae] Fox's legal-malpractice action against [her former criminal-defense] attorneys regardless of which approach [wa]s applied." <u>Id.</u>

The two cases that Martin cites on appeal were addressed by this Court in Fox: Brewer v. Davis, 593 So. 2d 67 (Ala. 1991), and Michael v. Beasley, 583 So. 2d 245 (Ala. 1991). The Fox Court quoted from Brewer:

> "'In Michael v. Beasley, 583 So. 2d 245 (Ala. 1991), this Court held that the time limits set out in the Legal Services Liability Act, Ala. Code 1975, § 6-5-570 et seq., are to be measured from the date of the accrual of the cause of action, not from the date of the occurrence of the act or omission, and that a cause of action accrues when some injury occurs giving rise to a cause of action. In that case, we concluded that the Michaels sustained a legal injury sufficient for them to maintain an action at the time a jury verdict was returned against them and that their cause of action accrued at that time, not when this Court affirmed the trial court's judgment.
>
> "'In the present case, we find that the plaintiffs sustained a legal injury sufficient for them to maintain an action against the [attorneys] when this Court overruled the application for rehearing in Bullen v. Brown, [535 So. 2d 76 (Ala. 1988)]. In this case, unlike Michael v. Beasley, supra, the jury returned a verdict in favor of the plaintiffs and the plaintiffs sustained no loss or injury until this Court reversed the trial court's judgment and overruled the [rehearing] application [in Bullen].'
>
> "Brewer, 593 So. 2d at 68-69."

382 So. 3d at 1215.

23

In applying the "damage" approach to the case at hand, the <u>Fox</u> Court noted:

> "Fox's action is also time-barred under the damage approach. Fox first suffered legal damage on March 11, 2019, when the defense attorneys did not observe the deadline for filing her appeal in the criminal case and she lost her right to appeal. Although we need not consider it, legal damage also occurred on July 17, 2019, when the Court of Criminal Appeals dismissed her appeal. 'A cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of the damage is apparent at the time of the first legal injury.' <u>Chandiwala v. Pate Constr. Co.</u>, 889 So. 2d 540, 543 (Ala. 2004); <u>Kelly v. Shropshire</u>, 199 Ala. 602, 605, 75 So. 291, 292 (1917)(holding that the limitations period 'begins to run from the time the act is committed, be the actual damage (then apparent) <u>however slight</u>, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently ....'[](emphasis added))."

382 So. 3d at 1216 (footnote omitted).

On appeal, Martin argues: "A number of Martin's claims, pre- and post-foreclosure, are directly related to the [promissory n]ote and [the s]econd [m]ortgage[,] while others are related to Scarborough's purchase of the [property], as well as his leveraging the [promissory n]ote and [the s]econd [m]ortgage to defeat Martin's redemptive rights." Martin's brief at 35. In his pleading, Martin alleged:

> "The [promissory n]ote and [the second m]ortgage are void, voidable, and/or void <u>ab initio</u> as the same were procured by

24

fraud, fraud in the inducement, fraud in the factum and/or are otherwise not supported by adequate consideration, contain a unilateral and/or mutual mistake, are illusory, unconscionable, purport to create[] an unenforceable encumbrance on the [property] and/or are otherwise unlawful."

Thus, according to his own allegations pertaining to his counterclaims against the Scarborough parties, Martin first suffered a legal injury in 2012, when S&G acquired the promissory note and the second-mortgage interest in the property. Under the <u>Fox</u> Court's articulation and application of the "damage" approach to analyzing the accrual of actions asserted under the ALSLA, Martin's counterclaims against the Scarborough parties accrued in 2012, when he first suffered legal damage or injury.

In short, this Court has recently explained in <u>Fox</u> that, under this Court's precedent, there are two approaches to evaluating the accrual of actions under the ALSLA. Rather than address the split in authority, Martin simply ignores the existence of the "occurrence" approach and argues that his counterclaims are timely under the "damage" approach. Even under the "damage" approach, however, Martin's counterclaims under the ALSLA accrued in 2012, not in 2019, according to his own allegations.

25

Insofar as Martin argues that his various counterclaims against the Scarborough parties should be treated as having accrued at differing times for the purpose of applying the limitations periods imposed by the ALSLA, Martin cites no authority in support of such an argument. "We have unequivocally stated that it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument." Dykes v. Lane Trucking, Inc., 652 So. 2d 248, 251 (Ala. 1994). Therefore, we conclude that all of Martin's counterclaims against the Scarborough parties accrued in 2012.

c. Compulsory Counterclaims

Martin also alternatively argues on appeal that the limitations periods imposed by the ALSLA are inapplicable to his counterclaims against the Scarborough parties because, he says, his counterclaims were compulsory counterclaims in Scarborough's ejectment action against him. In Romar Development Co. v. Gulf View Management Corp., 644 So. 2d 462, 473 (Ala. 1994), this Court held, in relevant part: "Compulsory counterclaims for money damages are not subject to statutes of limitations and permit recoveries in excess of the amount of the claim."

26

The <u>Romar</u> Court's holding in this regard relied on the Florida Supreme Court's decision in <u>Allie v. Ionata</u>, 503 So. 2d 1237, 1239 (Fla. 1987), which held that "'the intent of the present rules [of civil procedure] will be best served by holding that a compulsory counterclaim in recoupment permits the recovery of an affirmative judgment even though barred as an independent cause of action by the running of the statute of limitations.'" (Quoting <u>Cherney v. Moody</u>, 413 So. 2d 866, 869 (Fla. Dist. Ct. App. 1982).)

In response, the Scarborough parties do not challenge Martin's characterization of his counterclaims as compulsory counterclaims. Instead, the Scarborough parties argue that Martin's counterclaims are absolutely barred by the four-year period of repose imposed by § 6-5-574. See <u>Cockrell v. Pruitt</u>, 214 So. 3d 324, 335 (Ala. 2016)(characterizing the four-year limitations period imposed by § 6-5-574 as a statute of repose); <u>Coilplus-Alabama, Inc. v. Vann</u>, 53 So. 3d 898, 904 (Ala. 2010)("Under § 6-5-574(a), there is a four-year absolute bar on all claims occurring on or after August 1, 1987."); <u>Denbo v. DeBray</u>, 968 So. 2d 983, 990 (Ala. 2006)("[T]he second proviso of § 6-5-574(a) states that 'in no event may the action be commenced more than four years after such act or omission

27

or failure.'  That absolute four-year bar is reiterated in subsection (b)."); and Ex parte Panell, 756 So. 2d 862, 867 (Ala. 1999)(plurality opinion)("[Section] 6-5-574 provides that a legal-malpractice action must be filed within four years of the wrongful act or omission, regardless of whether the client has suffered damage.").

The Scarborough parties essentially argue that the rule stated in Romar concerning the inapplicability of statutes of limitations to compulsory counterclaims has no bearing on the imposition of statutes of repose because, they say, statutes of repose "totally extinguish any rights that a counterclaim plaintiff may possess."  Scarborough parties' brief at 17.  It does not appear that this Court has addressed whether Romar's holding regarding compulsory counterclaims renders statutes of repose inapplicable in the same way it does statutes of limitations.

However, in support of their argument on this point, the Scarborough parties cite -- as they did in the circuit court -- an unreported decision of the United States District Court for the Northern District of Alabama, Right Way Restaurants, Inc. v. Oldfield Eastern Corp., Case No. 5:02-CV-1331-VEH, Aug. 4, 2006 (N.D. Ala. 2006)(not reported in Federal Supplement).  In ultimately determining that a statute of repose

foreclosed certain counterclaims that had been asserted in the action pending before it, the <u>Right Way</u> court reasoned, in relevant part: "In determining whether a party still has the right to raise a statutory claim, it is critical to distinguish between a 'statute of limitations' and the extinguishment of a statutory right. <u>See</u> <u>Beach v. Ocwen Federal Bank</u>, 523 U.S. 410 (1998)."

In <u>Beach v. Ocwen Federal Bank</u>, 523 U.S. 410 (1988), the United States Supreme Court affirmed the judgment of the Florida Supreme Court in <u>Beach v. Great Western Bank</u>, 692 So. 2d 146 (Fla. 1997). The United States Supreme Court noted that the Florida Supreme Court had "explained that its prior cases permitting a defense of recoupment by an ostensibly barred claim were distinguishable because, among other things, they involved statutes of limitation, not statutes extinguishing rights defensively asserted." <u>Beach</u>, 523 U.S. at 414.

One of its previous decisions that the Florida Supreme Court distinguished in <u>Beach</u> was <u>Allie</u> -- the case on which this Court relied in <u>Romar</u> to reach the compulsory-counterclaim holding that Martin invokes on appeal. In <u>Beach</u>, the Florida Supreme Court characterized its holding in <u>Allie</u> as follows: "[W]e held that a counterclaim of

29

recoupment of money damages may be asserted even though the underlying claim itself would have been timebarred if raised as a separate cause of action." 692 So. 2d at 150-51. The Florida Supreme Court noted that the federal statute at issue in <u>Beach</u>

> "mirrors a statute of repose, not a statute of limitations ..., in that it 'precludes a right of action after a specified time ... rather than establishing a time period within which the action must be brought measured from the point in time when the cause of action accrued.' <u>Kush v. Lloyd</u>, 616 So. 2d 415, 420 (Fla. 1992)."

692 So. 2d at 152. The Florida Supreme Court continued:

> "[W]e have long recognized that 'when the right and the remedy are created by the same statute, the limitations of the remedy are treated as limitations of the right.' <u>Bowery v. Babbit</u>, 99 Fla. 1151, 1163-64, 128 So. 801, 806 (1930). In <u>Bowery</u>, we emphasized that the 'statute limiting the time to bring suit ... is not regarded as a technical statute of limitations.' 99 Fla. at 1164, 128 So. at 807."

<u>Id.</u> The Florida Supreme Court determined that <u>Allie</u> and other cases had "addressed distinct and separate questions of law ...." <u>Id.</u>

In short, the authority cited by the Scarborough parties indicates that, under Florida law, a distinction exists between statutes of repose and statutes of limitations when such statutes are asserted as defenses to compulsory counterclaims. In <u>Romar</u>, this Court relied on Florida law in holding that "[c]ompulsory counterclaims for money damages are not

30

subject to statutes of limitations and permit recoveries in excess of the amount of the claim." 644 So. 2d at 473.

Martin has not addressed the Scarborough parties' argument in this regard in his principal appellate brief, and he has not submitted a reply brief at all. Because the issue has not been thoroughly briefed in this case, we decline, at this time, to expressly decide whether to adopt the rationale of the Florida Supreme Court in Beach concerning statutes of repose and compulsory counterclaims. However, based on the arguments raised in the circuit court and Martin's limited argument on appeal, we have no difficulty concluding that Martin has failed to demonstrate reversible error by the circuit court regarding this issue.

> "[T]he failure of the appellant to discuss in the opening brief an issue on which the trial court might have relied as a basis for its judgment[] results in an affirmance of that judgment. [Fogarty v. Southworth, 953 So. 2d 1225, 1232 (Ala. 2006).] That is so, because 'this court will not presume such error on the part of the trial court.' Roberson v. C.P. Allen Constr. Co., 50 So. 3d 471, 478 (Ala. Civ. App. 2010)(emphasis added)."

Soutullo v. Mobile Cnty., 58 So. 3d 733, 739 (Ala. 2010).

d. Affirmance

The circuit court acted within its discretion in treating all of Martin's counterclaims against the Scarborough parties as arising under

31

the ALSLA. Because, even under the "damage approach," Martin's counterclaims against the Scarborough parties accrued in 2012 and because Martin has failed to demonstrate that the circuit court erred as a matter of law in failing to apply Romar's compulsory-counterclaim holding under the circumstances of this case, the circuit court's summary judgment in favor of the Scarborough parties on the ground that Martin's counterclaims under the ALSLA were time-barred is due to be affirmed.

III. Breach-of-Contract Counterclaim against BBVA

On appeal, Martin argues that his breach-of-contract counterclaim against BBVA was based on BBVA's alleged improper disclosure of Martin's personal financial information to Scarborough and upon BBVA's allegedly unauthorized distributions from the HELOC to Martin's former wife. We consider each issue in turn.

a. The HELOC

In its judgment, the circuit court concluded that any counterclaim by Martin based on allegedly unauthorized distributions made by BBVA from the HELOC it had extended to Martin were time-barred. Martin and BBVA agree that the applicable limitations period for Martin's

32

breach-of-contract counterclaim predicated on BBVA's alleged conduct in this regard is 10 years. See § 6-2-33(1), Ala. Code 1975.

Under the terms of the HELOC, only Martin was authorized to access the HELOC. The record indicates that Martin had complained to BBVA about approximately $13,000 in checks that he contended had been improperly drawn on the HELOC by his former wife. On appeal, Martin asserts that, "[b]ecause BBVA is a successor-in-interest to Compass, who originated the HELOC, all records concerning the HELOC transactions were not available, and the exact date(s) of the unauthorized distributions are unknown." Martin's brief at 38.

However, during his deposition, Martin testified that his former wife's unauthorized access to the HELOC had occurred in 2009. Thus, based on Martin's testimony, BBVA's alleged breach of contract in this regard occurred in 2009, and there is no genuine issue of material fact regarding that question. See Dow, 897 So. 2d at 1038-39. Therefore, the 10-year limitations period for bringing a breach-of-contract action regarding such draws expired in 2019, thereby rendering Martin's June 30, 2021, amended pleading naming BBVA as a counterclaim defendant untimely.

On appeal, Martin points to evidence indicating that, as late as April 5, 2017, he had complained of the allegedly unauthorized distributions and had been referred to BBVA's fraud division. He also asserts: "BBVA was added as a party to this action on June 30, 2021, and the statute of limitations was tolled." Martin's brief at 39. Martin cites absolutely no authority to support his contentions that either of the foregoing circumstances rendered his breach-of-contract counterclaim based on BBVA's allegedly unauthorized distributions from the HELOC timely. It is not this Court's function to construct such an argument for Martin. See Dykes, 652 So. 2d at 251.

b. Personal Financial Information

As noted, Martin also argues that his breach-of-contract counterclaim against BBVA is based on BBVA's alleged disclosure of personal financial information to Scarborough before BBVA's June 2019 foreclosure sale. In response, BBVA asserts that Martin's argument in this regard is "inexplicabl[e]" because "Martin never alleged or argued before the circuit court that his breach of contract claim [wa]s premised on the sharing of confidential information." BBVA's brief at 19. BBVA also argues: "Even so, such a claim would fail, because neither the

[m]ortgage nor the [HELOC a]greement contain any provisions that address the sharing of information." Id.

It is unclear which of Martin's multitudinous assertions in the circuit court he viewed as specifically marshaled in support of his discrete breach-of-contract counterclaim against BBVA. In his "final memorandum brief in opposition to [the] motions for [a] summary judgment," Martin asserted that "the unauthorized disbursements constituted a breach of the HELOC loan documents[, which was] the basis of Martin's [b]reach[-]of[-c]ontract [c]laim." In that same document, however, Martin also generally complained about BBVA's alleged disclosure of his personal financial information to Scarborough.

Even assuming that a breach-of-contract counterclaim based on BBVA's alleged disclosure of Martin's personal financial information to Martin was appropriately asserted in the circuit court, Martin's limited appellate argument on this point is not sufficient to warrant reversal of the circuit court's judgment. The extent of Martin's argument on this point is as follows:

> "The record reveals substantial and uncontroverted evidence of BBVA's sharing [personal financial information] with Scarborough following the February 2018 and June 2019 foreclosure sale notices by BBVA. On each occasion, BBVA

35

disclosed to Scarborough the balance, or approximate balance, purportedly due on the HELOC and the approved foreclosure bid to be submitted by BBVA. The specifics of the [personal financial information] disclosed to Scarborough in violation of BBVA's Loan Consumer Privacy Disclosures and of the Gramm-Leach-Bliley Act (the 'Act') are set forth in the seven (7) pages of memoranda prepared by the Scarborough [p]arties or Scarborough. Furthermore, Scarborough disclosed in his deposition the general nature of the [personal financial information] disclosed to him. The first disclosures occurred in January or February 2018, and the second disclosures occurred in or about June 2019."

Martin's brief at 37-38.

"'It is well established that general propositions of law are not considered "supporting authority" for purposes of Rule 28[, Ala. R. App. P.]. Ex parte Riley, 464 So. 2d 92 (Ala. 1985).' S.B. v. Saint James Sch., 959 So. 2d 72, 89 (Ala. 2006). This Court will not 'create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.' Spradlin v. Spradlin, 601 So. 2d 76, 79 (Ala. 1992)."

Allsopp v. Bolding, 86 So. 3d 952, 960 (Ala. 2011). Therefore, the circuit court's summary judgment in favor of BBVA regarding Martin's breach-of-contract counterclaim is due to be affirmed.

IV. Substantial Evidence

Finally, Martin argues that the circuit court erred by determining that he had failed to present substantial evidence in support of all of his other counterclaims. As noted above, as eventually amended, Martin's

36

pleading asserted 17 separate counterclaims. For the reasons explained above, the circuit court's judgment is due to be affirmed regarding all of Martin's counterclaims asserted against the Scarborough parties and Martin's breach-of-contract counterclaim asserted against BBVA.

In the brief that Martin filed in opposition to the summary-judgment motions filed by the Scarborough parties and BBVA in the circuit court, Martin agreed to "concede[]" certain counterclaims against BBVA in order to "streamline th[e] action." Therefore, he "d[id] not challenge [BBVA]'s [m]otion for [a s]ummary [j]udgment thereon." The only counterclaims against BBVA that Martin continued to maintain were his wrongful-foreclosure, civil-conspiracy, negligence, wantonness, and breach-of-contract counterclaims.

Although the heading of this portion of Martin's appellate brief purports to address any remaining counterclaims, its central focus appears to actually be Martin's contention that BBVA's foreclosure sale is due to be set aside based on what Martin contends was a wrongful foreclosure. For the reasons already explained above, we conclude that a genuine issue of material fact exists regarding the validity of the foreclosure sale, and we reverse the circuit court's summary judgment for

37

Scarborough on his ejectment claim for that reason. To the extent that this portion of Martin's appellate brief attempts to discuss any of his other counterclaims not already addressed above, he has failed to demonstrate reversible error by the circuit court. See Dykes, 652 So. 2d at 251.

## Conclusion

The circuit court entered a final judgment in this action; therefore, this appeal is properly before us. The circuit court erred by entering a summary judgment in favor of Scarborough regarding his ejectment claim because a genuine issue of material fact exists regarding whether BBVA's foreclosure sale and Scarborough's resulting foreclosure deed are void. Therefore, we reverse that portion of the circuit court's judgment and remand this case for further proceedings; in so doing, we pretermit consideration of Martin's argument concerning a statutory right of redemption.

The portions of the circuit court's judgment entering a summary judgment in favor of the Scarborough parties and BBVA regarding Martin's counterclaims are affirmed. In affirming those portions of the circuit court's judgment, however, we do not purport to limit the nature

of the evidence that may be considered in a trial of Scarborough's ejectment claim. As explained above, during a trial of that claim, the fact-finder may consider, in support of Martin's affirmative defense, evidence of the sale price and "'any other circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property[,]'" that would justify setting aside the foreclosure sale. Hayden, 216 Ala. at 431, 113 So. at 295 (citation omitted).

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Parker, C.J., and Shaw, Stewart, and Mitchell, JJ., concur.

Sellers, J., concurs in the result in part and dissents in part, with opinion, which Wise and Mendheim, JJ., join.

Cook, J., recuses himself.

SELLERS, Justice (concurring in the result in part and dissenting in part).

I respectfully dissent from the Court's decision to reverse the Lee Circuit Court's judgment in favor of Joseph T. Scarborough, Jr., on his ejectment claim based on Gary Everett Martin's affirmative defense asserting that the foreclosure sale was void. "[M]ere inadequacy of price is not sufficient" to justify setting aside a foreclosure sale. Hayden v. Smith, 216 Ala. 428, 430, 113 So. 293, 295 (1927). There must be other evidence of misconduct or fraud. Hayden, 216 Ala. at 431, 113 So. at 295. I agree with the trial court to the extent that it determined that there is no substantial evidence of such misconduct or fraud and that a summary judgment in favor of Scarborough was therefore appropriate.

At foreclosure sales, banks and other creditors simply seek to recover what they are legitimately owed. The function of foreclosure is to allow recovery of a debtor's liability by selling an asset that has value to satisfy the debt. Knowing that a debtor's promise and ability to repay a loan might be overly optimistic, promissory notes are secured by pledging an asset that has value to provide security for prompt payment. The actual value of the property is a mere tool for a bank to confirm the extent

of its security in the equity of the property. Here, the bank -- BBVA USA Bancshares, Inc. -- attempted to ascertain the value of the property only to verify that the balance due by the debtor -- Martin -- did not exceed the value of the property. To attribute anything inappropriate to an estimate of value fails to understand the foreclosure process. The objective of a bank foreclosing on an asset securing a loan is not to make a profit on the foreclosure but merely to recover the outstanding indebtedness.

A claim of wrongful foreclosure could never be supported only by the fact that a bank recovered the total amount of the debt, regardless of the value of the property. "A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan Ass'n, 607 So. 2d 180, 182 (Ala. 1992). There is no evidence indicating that the power of sale in this case was used for anything other than to secure a debt owed by Martin. The alleged inadequacy of the price paid for the property is not enough to justify submitting Martin's wrongful-foreclosure defense to Scarborough's ejectment claim to a jury.

41

I also find it particularly noteworthy that Scarborough, the purchaser at the foreclosure sale, was himself a creditor of Martin, and his debt was secured by a second mortgage on the foreclosed property. Thus, if the basis for reversing the trial court's judgment concerns the propriety of the price paid at the foreclosure sale and whether its inadequacy shocks the conscience, I believe the amount of the outstanding debt owed to Scarborough, as the second lien-holder, should be taken into consideration. In entering the summary judgment, the trial court apparently took this into consideration. Had the second lienholder not purchased the property, the security for his debt could have been extinguished. See Mobley v. Brundidge Banking Co., 347 So. 2d 1347, 1352 (Ala. 1977) (indicating that a junior mortgagee may be entitled to funds recovered by the foreclosure of a senior mortgage if the sale price was in excess of the debt secured by the senior mortgage). So, to preserve the security for the debt owed to him and thus to protect the value of the debt, the second lienholder decided to purchase the property at the foreclosure sale. But in determining the amount to pay, it would make sense to pay the first lienholder only the outstanding balance owed. To pay more would only serve to increase the second lienholder's credit.

Reviewing the entirety of the transaction required the trial court to consider the total value of the property and all the outstanding indebtedness secured by the property. Rather than look solely at the value of the property, the trial court took into consideration the actual equity of the property, which would require that the value of the property be reduced by all the liabilities secured by the property. It would have been inappropriate to isolate the foreclosure and view the amount paid at the foreclosure sale out of context. Because the second lienholder was also a creditor of Martin, his outstanding balance was technically, albeit indirectly, paid since his purchase of the property extinguished the first lien -- i.e., BBVA's home-equity line of credit ("the HELOC"), which was secured by its first mortgage -- placing his mortgage as the senior mortgage and protecting his entire loan. The main opinion appears to consider only the value of the property and the outstanding balance on the HELOC. When the debt secured by Scarborough's second mortgage is considered and the amount he paid at the foreclosure sale is rolled into that debt, the total value paid is reasonable and does not shock the conscience.

It is also important to note that Martin had a number of options before, during, and after foreclosure. First, he could have brought the HELOC current and avoided foreclosure altogether. Second, he could have bid at the foreclosure sale and protected his equity in the property. Finally, after foreclosure, he could have exercised his right of redemption. He rested on his rights and can blame only himself for his loss of whatever equity he had in the property. Accordingly, I respectfully dissent as to this aspect of the main opinion, and I concur in the result insofar as the main opinion affirms the trial court's judgment on Martin's counterclaims.

Wise and Mendheim, JJ., concur.